WILLIAM H. PIERSON and GEORGE W. PIERSON, trading as PIERSON BROS., for the use of WILLIAM H. PIERSON *v.* SPRINGFIELD FIRE AND MARINE INSURANCE COMPANY, a Corporation existing under the Laws of Massachusetts.

*Demurrer—Defect in Pleadings.*

A demurrer in whatever stage of the pleadings it is taken reaches back in its effect through the whole record, and in general attaches ultimately upon the first substantial defect in the pleadings on whatever side it may have occurred—defects in substance not being aided by the adverse party's pleading over, as formal defects are.

The express conditions set forth in a policy of insurance are conditions precedent to the commencement of an action thereon by the plaintiff. The cause of action is not complete without showing performance of all the conditions on the part of plaintiff, or matter in excuse. By the terms of the policy, action was postponed until the expiration of sixty days after due notice of the fire and satisfactory proofs of the loss were received at the office of the company. There being no averment in the narr that such notice and proofs were given and furnished by the plaintiffs to the defendants at the place specified sixty days before the suit was brought, the declaration is therein defective in substance and judgment will be given for the defendant.

(*New Castle, November, 1885.*)

ACTION OF ASSUMPSIT upon a policy of insurance for loss by fire of certain property which was insured against the same by the defendant company.

The narr contained two counts, one stating the substance and effect of the policy of insurances, and the other setting out the policy in *haec verbis.*

The defendant pleaded specially and the plaintiff joined issue on several pleas and demurred to the other pleas. The case is before the court on the demurrer. The facts sufficiently appear in the opinion.

*Benjamin Nields,* for the plaintiff.

*Edward G. Bradford* and *Lewis C. Vandegrift,* for the defendant.

COMEGYS, C. J. : The counsel for the defendant having offered for consideration and insisted upon the rule—that in the case of a general demurrer to a subsequent pleading, the court will go back

and examine the whole record and give judgment against that party who has committed the first fault in the substantial pleading, we are to examine the declaration and determine upon its sufficiency in substance, the same as if it had been demurred to for insufficiency. "A demurrer in whatever stage of the pleadings it is taken, reaches back in its effect through the *whole* record, and in general attaches ultimately upon the first substantial defect in the pleadings on whichever side it may have occurred—defects in *substance* not being aided by the adverse party's mere pleading over, as formal defects are." "Hence, though the parties join in demurrer upon any one particular point, in any stage of the pleadings, judgment must, nevertheless, be given upon the *whole* record, and, regularly, against that party in whose pleading the first *substantial* defect has occurred. Thus, if the declaration is ill, in substance—the plea in bar frivolous—and demurrer joined on the *plea*, judgment must be for the *defendant*. For, though the issue in law is joined immediately and in terms on the *plea only*, and though that is worthless, yet a bad plea is sufficient for a *bad declaration*. *Gould's Pl.*, 474, 475, Secs. 36 and 37 of Chap. IX, and the cases there cited.

We are therefore to examine the declaration in this case, as the first pleading, and decide whether it is sufficient in substance to support the action brought—which is assumpsit.

There are two counts in the narr, one declaring upon the policy of insurance sued upon, according to its supposed legal effect. The other or second, sets out the policy in *haec verba*. Are these counts respectively, or is either of them sufficient in law for the above purpose? That is the question. To solve this question satisfactorily, it is necessary to determine what the true intent and meaning and undertaking of the policy are, as shown by it. This will fix its legal effect and proper construction.

Without undertaking to use the very language, or pursue the order, of the provisions of the policy, it may be taken to be a promise on the part of the defendant, in consideration of the money paid by the plaintiffs to insure to the amount of thirty-five hundred dollars, a stock of goods consisting of certain building material of wood, known as mill-work, contained in the building mentioned in the counts, for a term commencing on the 14th day of January, 1880, at twelve o'clock noon and ending with the same day 1881,

against all such immediate loss or damage sustained by the plaintiffs and their legal representatives as might occur by fire to the property specified, not exceeding the sum insured, nor the interest of the assured in the property, except as therein provided, other than loss by theft at or after the fire—loss occasioned by invasion, insurrection, riot, civil commotion, military or usurped power—by lightning or explosions of any kind unless fire ensued and then for the loss or damage by fire only—by loss or damage caused by removal of the property from a building where there is no loss by fire, unless such removal was necessary to preserve the property, in which case the damage was to be borne by both parties in proportion as the whole sum insured bore to the whole value of the property insured—nor for loss or damage caused by neglect to use all practicable means to save and preserve the property from damage at and after the fire—*to be paid to the plaintiffs sixty days after due notice, and satisfactory proofs of the loss or damage made by the plaintiffs are received at the office of the Company in Springfield;* upon condition that in case of loss, the plaintiffs should give immediate notice thereof, and render to the company a particular account under oath of the loss, stating the time, origin and circumstances of the fire, the occupancy of the building containing the property insured, other insurance upon the same, if any, and copies of all policies; the whole value and ownership of the property; and the amount of the loss or damage; and also should produce the certificate under seal of a magistrate, notary public, or commissioner of deeds nearest the place of the fire and not concerned in the loss, or related to the plaintiffs, that he has examined the circumstances attending the loss, knows the character and circumstances of the plaintiffs, and verily believes that they have, without fraud, sustained loss on the property insured to the amount claimed. There are other conditions, or provisions in the policy which affect the plaintiff's right of recovery; but as they do not interfere with his right to sue in the first instance, they need not now be referred to.

What are above stated as conditions affecting the liability of the defendant under the policy, are, with all other stipulations therein, expressly made such by the terms of the policy as set forth in the second count. The right of action, therefore, depended upon the performance of such conditions by the defendant, or of his being

able to render a valid excuse for non-performance. They are there-
fore conditions precedent to the commencement of an action by the
plaintiffs. The cause of action is not complete without showing
performance, or matter in excuse.

By the averment next the last in the first count, there is a
sufficient allegation that the plaintiff complied with, strictly, all
those condition—thus, *prima facie*, entitling himself to an action.
Such action, however, could not be brought immediately thereupon ;
but, by the terms of the policy, was postponed until the expiration
of sixty days after due notice of the fire, and satisfactory proofs of
the loss or damage were received at the office of the company at
Springfield. The defendant, therefore, had sixty days after notice
of the fire and satisfactory proofs of the loss or damage given and
made by the plaintiff's, were received at Springfield, in which to
pay for such loss or damage. There is, nowhere in the narr, an
averment that such notice and proofs were given and furnished by
the plaintiffs to the defendant at Springfield, or received by it there
from him. As the right to sue could not arise until sixty days
after such event or transaction, it follows that the plaintiff's do not
show by the declation they had a right of action against the defend-
ant. The defect is one of substance, and not of mere form ; and
therefore is fatal as against the present suit. The fact omitted to
be averred is material to recovery in the suit ; and being so, it was
necessary that it should be set forth in the narr, like all other mater-
ial facts, and proved also. The distinction between form and sub-
stance in pleadings is stated as follows in Sec. 17 of Chapter IX of
Gould's Pleading before referred to. " The difference between
matter of form and matter of substance, in general, under the stat-
ute of Elizabeth, as laid down by Lord Hobak, is that, *that* with-
out which the *right* doth sufficiently appear to the court is *form*, but
that any defect by reason whereof the *right appears not*, is a defect
in *substance.*" In the next section, giving his own defidition, the
author says—" if the *matter* pleaded be in itself insufficient, with-
out reference to the manner of pleading it, the defect is *substantial*,
but, if the only fault is in the form of alleging it, the defect is but
*formal.*" He then proceeds to give examples of both classes. In
this case the matter pleaded (that is, what appears by the declara-
tion) is insufficient—in that it is not averred that due notice of the

fire and satisfactory proofs of the loss or damage sustained by the plaintiff were received at the office at Springfield sixty days before the suit was brought.    The judgment in this case must therefore be for the defendant.

HOUSTON, J.:

There are two counts in the narr on the policy of insurance, which is in writing, but not under seal by the company, if it has any, and consequently the action is properly in assumpsit, and which is apparent to us upon the record.

The first of these counts sets forth the policy according to its substance, the second in the words in which it was written and printed in the usual form of its policies of insurance, to the first of which no less than fourteen special pleas have been filed, and about the same number, and substantially the same special pleas have been filed to the second count.    The first plea to each, however, consists of the general issue of *non assumpsit* in the action, while the second plea to each of them is in brief as follows :

Secondly, That the plaintiff did not give immediate notice of the said loss by fire to the said defendant in manner and form as he had alleged in said count;

Thirdly, That he did not give immediate notice to the said defendant of the said loss by fire and render to said defendant a particular account thereof in manner and form as he had alleged in said counts, except to the second count it adds that he did not render such particular account under oath, etc. ;

The fourth plea is to the first count only, and denies merely that the said George W. Pierson, his brother and formerly his partner in the business, transferred to the plaintiff and his assigns all his right and interest in the policy of insurance, and all benefit and advantage to be derived therefrom in manner and form as alleged by him in said first count;

And fifthly (and which plea is also to the first count only), that the plaintiff did not become entitled to the benefit and advantage to be derived from the policy of insurance in the first count mentioned in manner and form as alleged by him in that count. All these pleas to both of the counts have been traversed by the

plaintiff in his replication and issue is joined on each of them respectively.

But to the sixth plea to the first and to the fourth plea to the second count, which are substantially the same, and allege that in the said policy of insurance it was provided that any attempt at fraud on the part of the assured, should cause a forfeiture of all claim under the policy, and that the plaintiff being the assured under it, after the said fire had occurred and before the commencement of this action, did make an attempt at fraud upon the defendant, touching and concerning the said loss by fire, to wit.: On the 7th day of September, 1882, at New Castle County he was required by the defendant to produce for examination by the said defendant, certain books of account of the said plaintiff relating to the business of said plaintiff in order that the said defendant might ascertain the amount and cash value at the time of said fire of the goods, merchandise and effects of the said plaintiff burnt up, consumed and destroyed thereby, and being so required, the plaintiff did then and there wilfully and fraudulently neglect and omit to produce said books of account for examination as aforesaid with the intent on the part of the plaintiff to cause the defendant to believe that the amount and cash value, at the time of said fire of the said goods so burnt up and destroyed as aforesaid, were greater than in truth and fact they were and to deceive, injure and defraud the defendant in the premises, although the plaintiff when so required was able to produce said books of account for examination as aforesaid, the plaintiff has demurred and has in substance and in effect assigned the following causes therefor, viz :—that the said pleas do not allege that the said books of accounts mentioned in them in any manner related to the said property destroyed by said fire, nor to the business of said plaintiff connected therewith ; nor do they allege that the said books contained any statement or items showing the amount and cash value at the time of the said fire, of the goods, merchandise and effects of the said plaintiff, so burnt, consumed and destroyed thereby ; nor do they allege what the amount and cash value at the time of said fire of the goods, merchandise and effects of the said plaintiff burnt up, consumed and destroyed thereby actually were ; nor do they allege that the said plaintiff was required to submit to an examination under oath by

any person appointed by the defendant, and produce his books of account and other vouchers; nor do they allege that the defendant required the plaintiff to produce books of account relating to the said plaintiff's claim.

But the policy expressly stipulates "that in case of loss, the assured shall give immediate notice thereof, and shall render to the company a particular account of said loss, under oath, stating the time, origin and circumstances of the fire; the occupancy of the building insured or containing the property insured; other insurance, if any, and copies of all policies; the whole value and ownership of the property; and the amount of loss or damage; and shall produce the certificate, under seal of a magistrate, notary public, or commissioner of deeds, nearest the place of the fire; and not concerned in the loss or related to the assured, stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has without fraud sustained loss on the property insured to the amount claimed by the said assured. In no case shall the claim be for a greater sum than the actual damage to, or cash value of the property at the time of the fire, nor shall the insured be entitled to recover of this company any greater proportion of the loss or damage than the amount hereby assured bears to the whole sum insured on said property, whether such other insurance be by specific or by general or floating policies, and without reference to the solvency or the liability of other insurers, assignors, unless the assignee owns the property, must make the proof hereby required. If required, the assured shall produce books of account and other proper vouchers original or duplicate invoices, and all property hereby insured, whether damaged or not damaged; and be examined under oath by any person appointed by the company touching all questions by him deemed pertinent to the loss, and subscribe such examination when reduced to writing; and a refusal to answer such questions and subscribe such examination when reduced to writing shall cause a forfeiture of all claims under this policy." And although the last clause but one of it stipulates that if required, the assured shall produce books of accounts (on which alone, and in the very words of it), the breach of it by the plaintiff is alleged by the defendant in the two pleas demurred to by the

plaintiff for the reasons before stated, it is apparent I think, from the immediate context, as well from every other clause contained in the whole extract that the meaning and intendment of it was, that books of account relating to the property insured and the business connected therewith were the only books of accounts, the production of which could be required under it, for it would be unreasonable for us to interpret it, as we find it either in the policy or in the pleas, to mean any book or books of account which had no relation whatever to the property insured or the business connected with it. As such a thing would have been utterly useless at any time and under any circumstances, it could never have been intended or contemplated by either of the parties to the agreement, and it was therefore unnecessary for the defendant to allege in either of these pleas that the said books of account required to be produced as stated in them, in any manner related to the said property destroyed by said fire, or to the business of said plaintiff connected therewith, as such was clearly the import and meaning of the terms employed in the policy in regard to that matter wherever it is referred to in it, and the breach of that particular stipulation by the plaintiff is alleged in the very words of it, as I have before said, in the pleas; and if there could be no question or uncertainty as to the meaning of that stipulation on the face of the policy itself, it was as clearly sufficient to allege the breach of it simply in the words of it, as was done in this case.

And as this is the only stipulation in the policy of which any breach by the plaintiff is alleged in either of these pleas, I also consider all the other causes assigned by the plaintiff in support of his demurrers to them, equally insufficient. That it was not necessary for the defendant to allege in them that the said books of account required to be produced as averred in them, contained any statement or items showing the amount and cash value, at the time of the said fire, of the goods, merchandise and effects of the said plaintiff, so burnt, consumed and destroyed thereby. For with the interpretation which I have given to the stipulation and to the simple and direct breach in the words of it, as alleged in the pleas, no such, and no further allegation was necessary to constitute it a good plea of defense on that ground, because the agreement in that respect on that part of the plaintiff was positive and express, and

without any qualification, that he would produce his books of accounts relating to the property insured in his business connected with it, if required, and which rendered the actual production of them necessary as a condition precedent to the commencement of the action by the plaintiff. Nor were any of the other allegations set forth in the remaining causes of demurrer assigned by the plaintiff, necessary for the reasons already stated, as they all proceed on the same erroneous assumption that the pleas in question imported that the defendant had required the production of books of account by the plaintiff, which did not relate or pertain to the property insured or his business connected therewith, and as the meaning and construction of the terms referred to in the policy and literally repeated in the pleas, are to be ascertained and determined by the court, I accordingly think that the demurrer of the plaintiff to the sixth plea of the defendant to the first count in the declaration, and to the fourth plea to the second count in it, are insufficient, and should therefore be overruled by the court.

The seventh plea to the first, and the fifth plea to the second count, are also substantially the same, and are in brief as follows :— that after the said fire had occurred, and before the commencement of the action, the plaintiff made an attempt at fraud upon the defendant, touching and concerning the said loss by fire in the said counts mentioned, in that the plaintiff did in and by his statement under oath, in said counts mentioned, of the amount of loss, or damage by said fire, knowingly, wilfully and fraudulently state that the amount of the said loss on the said goods and effects burnt up, consumed and destroyed by the said fire according to the cash value thereof at the time of said loss, was the sum of twelve thousand eight hundred and ninety-nine dollars and twenty-one cents, with the intent on his part to cause the defendant to believe that the cash value at the time of said loss, of said goods and effects, so burnt up, consumed and destroyed, was greater than in truth and fact it was, and to deceive, injure and defraud the defendant in the premises, although the cash value thereof at the time of said loss was, and was by the plaintiff at the time of making his said statement under oath well known to be a much smaller sum of money than the sum of money aforesaid, to wit. :—the sum of five thousand dollars.

To these two pleas the plaintiff has also demurred and assigned the following causes therefor in substance: That although it is alleged by the defendant in said pleas that the said misrepresentation of the said loss or damage by said fire was made by the plaintiff with the intent to cause the defendant to pay to him a much larger sum than the actual amount of the loss sustained by him in the destruction of said goods by said fire, they do not allege that said statement was made with the intent to cause the said defendant to pay to the said plaintiff a larger sum than is claimed on said policy, to wit. :—The sum of thirty-five hundred dollars; nor do they allege how or in what manner the said defendant was, or could be harmed or injured by the alleged statement.

The stipulations in the policy on which the defense of these two pleas is predicted are, *first,* that which requires the assured in case of loss to give immediate notice thereof, and to render to the company a particular account of said loss, under oath, stating among other things specified, " The whole value and ownership of the property; and the amount of loss or damage;" *secondly,* to " produce the certificate under seal of a magistrate, notary public, or commissioner of deeds nearest the place of the fire, and not concerned in the loss or related to the assured, stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has without fraud, sustained loss on the property insured to the amount claimed by the said assured. In no case shall the claim be for a greater sum than the actual damage to, or cash value of, the property at the time of the fire, nor shall the insured be entitled to recover of this company any greater proportion of the loss or damage than the amount hereby assured bears to the whole sum insured on said property," etc., and *thirdly,* " any fraud, or attempt at fraud, or any false swearing on the part of the assured shall cause a forfeiture of all claim under this policy."

These stipulations constitute parts of the express agreement entered into with the company by every person who obtains a policy of insurance of this kind from it on his property, and when the breach of any of them by the plaintiff is pleaded as a legal defense to an action by him against the company on such a policy of insurance, if the fact of the breaches alleged is admitted, or is not traversed

or denied before the court upon the record, it would seem to be by the consent and agreement of the assured embodied in the contract between the parties, a legal defense to the action. But these two pleas aver that the alleged false statement by the plaintiff under oath that the amount of the loss or damage by said fire was twelve thousand eight hundred and ninety-nine dollars and twenty-one cents, when it was in fact of a much smaller amount, to wit.:—the sum of five thousand dollars, was knowingly and wilfully so made by him with the intent to cause the defendant to believe that the said loss was much greater than in truth and fact it was, and to deceive, injure and defraud the defendant in the premises; and the further meaning of which is that it was an attempt at fraud and a false swearing on the part of the plaintiff which caused a forfeiture of all his claim under the policy. And this allegation of the intent on the part of the plaintiff thus to defraud the defendant in the premises, in itself considered, as much an allegation of a fact in the pleas, as that of any other fact alleged in them, as that he made the alleged statement itself, or made it under oath, and that it is an allegation of a fact in the pleas is only the more obvious when we consider that was this intent alone, if it existed, that constituted the alleged act an attempt at fraud on part of the plaintiff in the premises. If the plaintiff had traversed these pleas the allegation that the statement was wilfully and falsely made by him with the intent to defraud the defendant, it would have been the allegation of a material fact in the case, to be submitted to and found by the jury in order to sustain these pleas. But the plaintiff has demurred to them, and by the causes assigned for it evidently expects the court to infer that there could not have been such an intent on the part of the plaintiff, and that the defendant could not have been harmed or injured by the alleged statement, inasmuch as it appears from the pleas themselves that the alleged loss actually sustained five thousand dollars, was a larger sum than is secured by, or can be claimed on the policy, to wit.: — the sum of thirty-five hundred dollars; without denying, however, except indirectly and inferentially, as I have before stated, the allegation in the pleas that the said statement was so made by the plaintiff with the intent to defraud the defendant. It is neither a demurrer or plea properly considered I think, inasmuch as it neither admits or directly denies

the pleas, and it is too uncertain and equivocal to be sustained as a sufficient answer by way of demurrer to the pleas in question, and should therefore be overruled by the court.

And I also consider the demurrers to the eighth plea ·to the first, and to the sixth plea to the second count which are substantially the same, are insufficient. The main allegation in each of them simply is that the plaintiff did wilfully and falsely swear in said statement that the amount of the said loss on said goods was the sum of twelve thousand and eight hundred and ninety-nine dollars and twenty-one cents, although the cash value of all said goods so burnt, consumed and destroyed, was at the time of said loss, and was well known to the plaintiff at the time of making the said statement under oath, to be a much smaller sum of money than the sum aforesaid, to wit :—the sum of five thousand dollars ; and essentially differing only from the two preceding pleas in the omission to allege that it was done with the intent to defraud the defendant, or with any other intent or qualification whatever. And yet with this fact thus alleged in each of these pleas the plaintiff has demurred to them, and assigned for causes of it that the pleas do not allege that said statement was made with the intent to cause the defendant to pay to the plaintiff a larger sum than is claimed on said policy, to wit :—the sum of thirty-five hundred dollars ; nor do they allege how or in what manner the said defendant was, or could be harmed or injured by the alleged statement. But it was obviously and utterly unnecessary that the pleas should contain either of these allegations, or any other allegation than we find in them to constitute each of them as they stand, if the fact alleged in them be admitted, or if on a traverse of them hereafter under the recent statute, it should be proved on a trial of the case before a jury, a good and complete defence to the action. For in my opinion, if it was a fact, as alleged in the pleas, that the plaintiff wilfully, knowingly and falsely swore that the amount of the loss on the said goods so burnt and destroyed by the said fire was twelve thousand eight hundred and ninety-nine dollars and twenty-one cents, when in truth and in fact it was much less, to wit : five thousand dollars—it was a direct breach of the stipulation in the policy, that in case of a loss, he should give immediate notice thereof, and should give to the company a particular account of said

loss, under oath, stating among things specifically mentioned in connection with it, "the whole value and ownership of the property, and the amount of loss or damage;" and also a direct breach of the further stipulation in the policy, that "any fraud, or attempt at fraud, or any false swearing on the part of the assured shall cause a forfeiture of all claim under this policy." And of all the obligations expressly assumed by the plaintiff on entering into this contract of insurance by accepting this policy, there was none more solemn nor stringent than this, perhaps; but this agreement on the part of the plaintiff not to swear falsely to that, or any other specific statement of fact required to be made under oath upon the penalty or forfeiture of all claim under the policy, is a distinct and substantive stipulation in itself independent of all other specific stipulations contained in the policy, and although it may be impossible to conceive that any such false statement could have been wilfully and knowingly made by him under oath with an entirely innocent, honest or harmless intention towards the defendant, it requires no other allegation of intent on the part of the plaintiff in these two pleas to constitute it a clear violation and breach of that particular stipulation, than that he intentionally swore falsely to the amount of the loss, as is substantially alleged in them. But is not this allegation of a materal and substantial fact in the pleas, and a good defence to the action, if the allegation be true, admitted by the demurrer, which instead of denying it, assigns for cause that they do not allege that the said statement was made with the intent to cause the said defendant to pay to the said plaintiff a larger sum than is claimed on said policy, to wit :—the sum of thirty-five hundred dollars; nor do they allege how, or in what manner the said defendant was, or could be harmed or injured by the alleged statement. That is to say, because it appeared from the pleas themselves that the loss was at least as much as five thousand dollars; and all of which by necessary implication, if not expressly, admits that the said statement so made by the plaintiff under oath, was false in that particular, and was well known to him to be false when he so made and swore to it? The demurrer is not for matter of form, but matter of substance, although special causes are assigned for it, and neither of them is sufficient to support it. Such is my opinion, and I therefore think that the demurrers to the

eighth plea to the first, and to the sixth plea to the second count should also be overruled by the court.

The ninth, tenth and eleventh pleas to the first count, and the seventh, eighth and ninth pleas to the second count, which are substantially the same, are traversed in the replication, and issue is joined on each of them.

The twelfth plea to the first, and the tenth plea to the second count, which are substantially the same, allege that before the commencement of the action the plaintiff made certain false entries in his books of account relating to the business of the said plaintiff, with the intent to deceive the said defendant as to the amount and value of the said goods burnt up, consumed and destroyed by the said fire, and to injure and defraud the defendant in the premises; to each of which pleas the plaintiff has demurred and assigned the following causes therefor;—because they do not allege what entries were made by the plaintiff in said books of account, with the date or dates thereof, nor wherein said alleged entries were false; nor do they allege that said books of account in any manner related to the said property destroyed by the said fire, or to the business of the said plaintiff connected therewith.

I consider that in pleas of fraud of this kind the allegations contained in them were sufficient to constitute a good plea in a case of this character without either of the additional allegations suggested in the first cause of demurrer assigned, and also without either of the additional allegations suggested in the second cause of demurrer assigned, for the reason before stated by me when considering a similar objection in the demurrers to.

I therefore think that the demurrers to the twelfth plea to the first, and to the tenth plea to the second count, should also be overruled.

But I think the demurrer of the defendant to the replication of the plaintiff to the thirteenth plea of the defendant should be sustained on the grounds assigned for it in the causes of demurrer, and because the replication in effect denies that the defendant has put a proper construction in and by his said plea on the word "immediately" in the phraseology of the said policy of insurance wherein it provides as one of the conditions thereof " that the assured in case of loss by fire, should immediately thereafter render

to said defendant a particular account thereof, etc., as alleged in said plea, and the plaintiff thereby seeks to raise as a question of fact on the said replication, a question of legal construction purely to be determined by the court on the meaning of the word immediately when it occurs in such connection in a policy of insurance and in a case like this; and that judgment should therefore be rendered for the defendant on this demurrer.

And I think that the demurrer of the defendant to the replication of the plaintiff to the fourteenth plea to the first count in the declaration is not sustainable, for as I have before said I have no doubt that the provision of the policy on which that plea is based has reference only to such books of account of the plaintiff as had relation to the goods and property covered by the policy of insurance, and to the business of the plaintiff connected therewith. The language of it, as well as the reason of the thing clearly imports this I think. It is in these words: " If required, the assured shall produce books of account and other proper vouchers, original or duplicate invoices, and all property hereby insured, whether damaged or not damaged," etc. The connection in which the words *books of account* occur in this sentence clearly indicate and imply such books of account only as related like the " other proper vouchers," original or duplicate invoices, " to the property thereby insured, or to the business of the plaintiff connected therewith." And such must have been the meaning of the words in question according to the understanding and intention of both of the parties to the policy of insurance, because it would be utterly unreasonable to suppose that it could have been within the intendment of the parties that books of accounts having no relation to the property thereby insured, or no relation to the business of the plaintiff connected with it, would ever be required to be produced under this or any other provision of the policy. But under the generality of these words when taken without the context and the slight ambiguity which is only so made to appear in the meaning of them, the only breach of that condition in the policy alleged in the plea, is limited to them exclusively, for it singularly omits to allege any breach of the context, or to allege that the plaintiff was at the same time required to produce other proper vouchers, " original or duplicate invoices, and all property thereby insured whether damaged or not

21

damaged," or that the plaintiff then and there refused and omitted to produce them. And as the plea thus seeks to take advantage of this slight ambiguity arising from the generality of the words " books of account," when read or considered without the context, as a defence to the action, I think the plainntiff was warranted by the character and design of the plea in replying to it specially, instead of traversing it and taking issue upon it. But for the reasons already stated, I think the plea itself is as defective and demurrable, as the replication to it, and even more so; as, however, there is no demurrer to the plea, and I am now only considering *seriatim* the several demurrers in the order in which they are presented in the record of the case, and the plea and replication are alike defective. I will here merely say, that I am of the opinion that the demurrer to the replication now under consideration should be overruled.

The demurrer of the defendant to the replication of the plaintiff to the fifteenth plea to the first count of the declaration, is good in my opinion and should be sustained, because the replication in effect substantially traverses and denies the whole plea, and which it should have done in form as well as effect, instead of replying to it specially and in a double manner, as we find it. I therefore think that judgment should be rendered for the defendant on this demurrer.

And for the reasons before stated I think the demurrer of the plaintiff to the fourth plea of the defendant to the second count of the declaration, is not sustainable and should therefore be overruled.

And for the reasons before stated I also think the demurrer of the plaintiff to the fifth plea of the defendant to the second count of the declaration should be overruled. And also that the demurrer of the plaintiff to the sixth plea to the second count of the declaration should be overruled.

And for reasons before stated my opinion also is that the demurrer of the plaintiff to the tenth plea to the second count of the declaration should be overruled.

And for the reasons before stated I consider the demurrer of the defendant to the replication of the plaintiff to the eleventh plea to the second count of the declaration should also be overruled.

But I consider the demurrer of the defendant to the replica-

tion of the plaintiff to the twelfth plea to the second count of the declaration sufficient, and that judgment should be thereupon entered for the defendant. And also that the demurrer of the defendant to the replication of the plaintiff to the thirteenth plea to the second count, is sufficent and should be sustained by the court.

But relying on the well settled rule of pleading that a demurrer, in whatever stage of the pleadings it is taken, reaches back in its effect through the whole record, and in general attaches ultimately upon the first substantial defect in the pleadings, on which ever side it may have occurred—defects in substance not being aided by the adverse party's pleading over, as defects in form rarely are. Hence though the parties join in demurrer upon any one particular point in any stage of the pleadings, judgment must nevertheless be given upon the whole record, and regularly against that party in whose pleadings the first substantial fault has occurred. *Gould's Pl.*, Chap. 9, Secs. 36, 37. The counsel for the defendant further contend that certain substantial defects specified by them occur in the declaration of the plaintiff, either of which is sufficient under that rule to entitle the defendant to judgment against the plaintiff on any one of the demurrers joined in issue by the parties in the case, and that both special counts in the narr are faulty in substance for the reasons assigned, viz. :

1. The first count states that the insurance money was to be paid sixty days after the notice and satisfactory proofs of the same made by the assured were received at the office of said defendant in Springfield. But there is no allegation either that such proofs were received at Springfield sixty days before the bringing of the suit, or ever were received there.

Was such an allegation necessary in that count after alleging, as it does, that the plaintiff gave immediate notice of the said loss by fire, and render to said defendant a particular account of said loss under oath, with the certificate under the seal of the notary public nearest the place of the fire, in full and complete compliance in every particular as required by the condition of the said policy of insurance? I cannot think that it was, and the fact that it is further alleged by the plaintiff on the record that he did not refuse or omit to produce on the requisition of the defendant for its examination, his books of accounts relating to the property insured

and his business connected therewith, but adds to the conclusion of my mind that such an allegation was not necessary in that count. For so much being alleged to have been done by the plaintiff in accordance with the conditions and requirements of the policy, to supply the specified proofs of the loss by the fire, and not being satisfactory to the defendant, we must, I think, consider that it now properly becomes a question to be determined in the trial of this action, whether the proofs so submitted and received at Springfield were sufficient within the true meaning and intendment of the agreement between the parties, unless we are prepared to hold that the proper constructions of this somewhat remarkable clause in the policy confers upon the defendant, by the intendment of both of the parties, the sole and exclusive right and the absolute power of determining the question when the proof of the loss should be satisfactory to the company.

2. The second count it is objected is fatally defective upon the same ground and in regard to which my opinion of course, is the same as on the first objection.

3. The first count it is next objected nowhere states the defendant's promise after the loss to pay any moneys.

But was that necessary, inasmuch as it alleged in the count the said company, a corporation existing under the laws of the State of Massachusetts, was summoned to answer the plaintiff of a plea of trespass on the case, upon promises and thereupon the plaintiff by Benjamin Nields, his attorney, complains: For that, whereas, heretofore, to wit: — on the fourteenth day of January, A. D. eighteen hundred and eighty, at the county aforesaid, a certain policy of insurance was then and there made and entered into and signed by the President and Secretary of the said corporation defendant, and countersigned by James Wooley, agent at Wilmington in the State aforesaid, and the same was then and there delivered by the said defendant unto William H. Pierson and George W. Pierson, trading as Pierson Bros., under and by which said policy it was agreed as follows :—That the said defendant in and by said policy of insurance, in consideration of the receipt of thirty-five dollars to them paid by said Pierson Bros., did insure the said Pierson Bros. against loss or damage by fire to the amount of thirty-five hundred dollars, for the term of one year on their stock of

goods "therein mentioned, and with the further description, terms, limitations, stipulations and conditions in said policy contained and in said count substantially alleged in the form and manner usual in such cases. In this the count expressly alleges the action to be in assumpsit on the case, upon promises and a policy of insurance in writing, but without seal, made and delivered by the defendant corporation to the assured for the consideration mentioned, and then and there paid to it for the first year, and twice afterwards on the renewal of it on each of the two succeeding years. The import of the allegation in the count, therefore, is that the said defendant in and by the said policy of insurance, in consideration of the receipt of the said thirty-five dollars to them paid by said Pierson Bros., agreed to insure them against loss or damage by fire to the amount of thirty-five hundred dollars, for the term of one year on their said stock of goods and property therein described and more set forth. And we have the authority of Mr. Chitty, and the case cited by him, that this word *agreed* in a declaratian in assumpsit is equivalent to the word promised, for he says a declaration in assumpsit should in all cases show that a promise has been made, either by expressly averring that the defendant "promised," or by other equivalent words, and afterwards adds that the word "agreed" is held to be an equivalent word. 1 Ch. Pl., 308. And this was the promise made in this case on which the action was founded and was the only promise to be alleged or proved in it to support it, so far as any promise could be needed for that purpose in an action of assumpsit on a written agreement or contract, as this was. This promise, however, was not only in writing, but was a conditional promise wholly dependent upon a future accident or contingency which might never happen, in which event the defendant had to pay nothing, notwithstanding the consideration received, and which as an actionable promise could have no force or effect whatever in law, until the future accident or contingency should occur, but the instant it occurred became unconditional, absolute and complete in its legal force and effect by the terms of the contract itself, and therefore no promise after that could be required or need be alleged in the declaration to give legal validity to it, or to maintain an action of assumpsit upon it. And what I have just said will also

apply to all the objections of the defendant following the 3d down to, and including, the 4th.

5. The fifth objection of the defendant that the policy set out in the second count is not stated to have been countersigned by the duly authorized agent of the defendant at Wilmington, but I think that allegation sufficiently appears in the count.

6. The sixth and last objection is to the second count also, and which is that it is fatally defective in that no proper breach is laid or alleged in it, because the contract to be performed by the defendant was in the alternative, viz: Either to repair, restore, or replace the property, or to pay the loss or damage. And that the loss was not compulsorily payable until the lapse of sixty days after satisfactory proof thereof. But the policy contemplates that alternative performance may be entered upon within this time, viz: upon or after notice within thirty days after the receipt of proofs of loss. Where a contract is in the alternative, the breach must be laid accordingly. 1 Ch. Pl., 334. This is a case of alternative promises. *Leake on Contracts*, 675, 679.

This objection to the second count, I consider is well taken and should be sustained. In a late edition of Chitty's Treatise on Pleadings by I. C. Perkins, L. L. D., I find the form of a declaration or count on a policy of insurance similar to this prescribed, the conclusion of which is as follows:—" And although all conditions have been performed and fulfilled, and all events and things existed and happened, and all periods of time have elapsed, to entitle the plaintiff to a performance by the defendant of their said contract, and to enable the plaintiff to maintain, and nothing existed or has occurred to prevent the plaintiff from maintaining this action, yet the plaintiff hath not out of the stock and funds of the said company, or in any other manner, been paid or made good the said damage and loss so sustained by him as aforesaid (*if the policy gives an election to the defendants to reinstate, that clause must be set out in the declaration, and the following breach added here*) nor have the defendants reinstated the premises so injured and destroyed as aforesaid. And the plaintiff claims 2 Ch. Pl. 171. The omission of the alternative breach in the second count was a substantial defect, and must therefore be held fatal to it on the demurrers joined in the case.